1
2
3
4
5
6
7        IN THE UNITED STATES DISTRICT COURT FOR THE

8                    EASTERN DISTRICT OF CALIFORNIA

9

BETTY GILLESPIE,                    )        1:10cv01796 LJO DLB
10                                  )
                Plaintiff,          )        FINDINGS AND RECOMMENDATIONS
11                                  )        REGARDING PLAINTIFF'S
                                    )        SOCIAL SECURITY COMPLAINT
12                                  )
        vs.                         )
13                                  )
MICHAEL J. ASTRUE, Commissioner of  )
14  Social Security,                )
                                    )
15              Defendant.          )
   _____ )
16
                              **BACKGROUND**
17
        Plaintiff Betty Gillespie ("Plaintiff") seeks judicial review of a final decision of the
18
Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance
19
Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the
20
Social Security Act.  The matter is currently before the Court on the parties' briefs, which were
21
submitted, without oral argument, to the Magistrate Judge for findings and recommendations to the
22
District Court.
23
                    **FACTS AND PRIOR PROCEEDINGS**[1]
24
        On October 1, 2003, Plaintiff protectively filed for DIB and SSI.  AR 353-59.  She alleged
25

26      [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

27

28                                      1

disability since October 20, 2003, due to bipolar disorder, mental illness, lack of concentration and memory loss. AR 138. After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 78-81, 84-89, 90. On February 16, 2006, ALJ James Ross held a hearing. AR 649-72. ALJ Ross denied benefits on May 16, 2006. AR 360-69. On September 14, 2007, the Appeals Council vacated the decision and remanded the case for further proceedings. AR 370-73.

On March 6, 2008, ALJ James Berry postponed a second hearing to obtain additional medical evidence. AR 673-78. On September 30, 3008, ALJ Berry convened a hearing. AR 679-719. ALJ Berry denied benefits on November 4, 2008. AR 26-39. On July 28, 2010, the Appeals Council denied review. AR 7-11.

Hearing Testimony

1.    February 16, 2006

ALJ Ross held a hearing on February 16, 2006, in Fresno, California. Plaintiff appeared with her attorney, Charles Oren. AR 651.

Plaintiff testified that she lives alone in an apartment. She doesn't go out a lot and doesn't drive. A friend takes her grocery shopping. Plaintiff does her own laundry and cooks meals. She sometimes has a hard time concentrating. AR 654-55.

Plaintiff sees Dr. Callado and visits the behavioral center in Madera. She takes Zoloft, Abilify, Klonopin, a sleep medication and three pain medications. AR 655. She gets panic/anxiety attacks throughout the day. Her medications cause side effects of weight gain and blurred vision. AR 656-58. She does not read the newspaper or watch TV. She can concentrate for 10 minutes, sit about 15 minutes and stand about 15 minutes. She has restless leg syndrome and takes Vicodin. AR 658-59.

Plaintiff's anxiety and depression date back to 1986. She had a nervous breakdown and started mental health counseling. AR 660.

She tried to work a couple months before the hearing providing in-home care for her sister. The job included laundry, housecleaning, grocery shopping and taking her sister to the doctor. She

2

worked 40 hours for one month.  She couldn't drive her sister to appointments because of anxiety attacks and her sister "gently" fired her.  AR 660-61.

Plaintiff was hospitalized in 2004 for suicidal thoughts.  AR 661-62.

Plaintiff has carpal tunnel and takes Vicodin, Tylenol with codeine and Soma for pain.  AR 662.  She tried to work as a cocktail waitress in 2004, but quit after two weeks.  She kept dropping things and couldn't deal with the customers.  AR 662.

Plaintiff received a GED and almost completed college.  AR 664.

In response to questions from the ALJ, Plaintiff clarified that she had a breakdown in 1986.  She went to counseling and to a psychiatrist.  She has been receiving mental health treatment intermittently since she was 21.  AR 666.

In 1998 or 1999, Plaintiff stopped working because of her carpal tunnel and mental issues.  She started seeing Dr. King for carpal tunnel.  She was tested and provided medication, including Tylenol with Codeine.  No one proposed surgery.  AR 668.

Plaintiff applied for disability shortly before she was hospitalized in 2003.  At the time, they were having a hard time finding the right medications for her depression and anxiety attacks.  She was feeling suicidal and her panic attacks worsened.  AR 668-69.  She sees Dr. Callado once every eight weeks for medication, but has not gone to counseling for six months.  AR 670.

The ALJ left the hearing open to obtain additional medical records.  AR 671-72.

2.    March 6, 2008 Hearing

ALJ Berry postponed the March 2008 hearing to obtain additional records.  AR 676-78.

3.    September 30, 2008 Hearing

ALJ Berry held a hearing on September 30, 2008, in Fresno, California.  Plaintiff appeared with her attorney, Sengthiene Bosavanh.  Vocational Expert Judith Najarian also appeared.  AR 681.

In response to questions from her attorney, Plaintiff reported that she had not worked since she last testified.  Her impairments were about the same, but better because she takes her medicine and she stays at home.  Plaintiff clarified that she still hears voices, but they are better.  AR 682-83.

During the day, Plaintiff lies down for two or three hours.  For the rest of the day, she sits and

3

1   watches TV.  She can concentrate about 15-20 minutes at time.  Since the last hearing, DMV took

2   her driver's license because of her medications.  AR 684-85.

3       In response to questions from the ALJ, Plaintiff testified that she is divorced and has two

4   children ages 23 and 29.  She received her GED in 2001.  She worked as a waitress in September and

5   October 2003.  As a waitress, she had to lift more than 20 pounds, but less than 50 pounds.  AR 686-

6   88.  She stopped working because she was dropping plates, could not focus on the orders and was

7   hearing voices.  AR 688.  She went to a doctor and he diagnosed her as bipolar.  It took a year to get

8   the right medication.  With her medication, the voices slowed down.  She was seeing a psychiatrist

9   for medication.  She also started receiving counseling and therapy about eight months before the

10  hearing.  She currently takes Abilify, Wellbutrin and Xanax.  She has been taking these medications

11  for four years with side effects of weight gain, sleepiness, and lack of concentration.  AR 688-92.

12      Plaintiff explained that during the first year of taking medication she was manic.  She

13  couldn't concentrate and couldn't sleep.  They lowered the dose and she started to level off.  After

14  the medications were stabilized, she knew she was better because the voices slowed down.  The rest

15  of the symptoms were still there–the anxiety and the lack of concentration.  She still hears voices

16  about three times a week.  The voices say that she doesn't want to live and to hurt herself because

17  she is not able to do things.  Her counselor encouraged her to write and draw again, but she cannot

18  concentrate.  AR 692-96.

19      Plaintiff testified that her voice interferes with her ability to work.  She has a condition that

20  paralyzes the left vocal cords.  She had surgeries to remove protein deposits.  She has check ups

21  every year and it will always be the same.  AR 698.

22      Back in 2003, Plaintiff had physical problems that interfered with her ability to lift, carry,

23  stand, walk and sit.  She had carpal tunnel in her right hand, arthritis and leg pain.  Her carpal tunnel

24  is better.  She is able to pick up items with her hands, but cannot lift over 10 pounds.  She can carry

25  10 pounds.  She has arthritis in her fingers and she takes Norco and Naproxen.  AR 700.

26      Plaintiff testified that at the time she stopped working, she could probably stand two hours

27  and walk seven hours.  Now she can walk 20 minutes and sit 2 hours in an eight-hour period.  AR

28                                                    4

700-02.  During the day, she will take a bath, do dishes, get dressed, comb her hair and talk to her sister.  AR 702-03.

Plaintiff tried walking, jogging and bicycling, but it was too painful.  She stopped about eight months before the hearing.  Plaintiff believed that the biggest thing stopping her from working is her agoraphobia, the voices and the anxiety attacks.  AR 703-04.

In response to additional questions from her attorney, Plaintiff reported that she could use her hands for about 20 minutes before needing an hour break.  Her medications reduce the pain about 50 percent, but she has side effects of drowsiness and lack of concentration.  She does not have any difficulties doing dishes for 20 minutes, but cannot stand longer because of her back, legs and hands.  Her back hurts most of the day.  With her pills, she gets 50 percent relief.  AR 704-08.

Plaintiff also reported that she can talk for three hours and then needs an hour break.  AR 707.

Plaintiff clarified that she tried riding a bicycle for half an hour three times a week for six weeks.  She stopped because of pain.  She also tried to jog twice, but stopped because of pain in her legs and back.  She tried walking three times a week for six weeks, but stopped because of pain in her back and legs.  AR 710-11.

The VE reported that Plaintiff's past work as a waitress was in the DOT as light and semi-skilled, but was sometimes performed at the medium level.  AR 714.  For the first hypothetical, the ALJ asked the VE to assume an individual 46 years of age with a GED certificate and Plaintiff's past relevant work.  This individual also had a combination of severe impairments and retained the residual functional capacity to lift and carry 100 pounds occasionally, 50 pounds frequently.  This individual also retained the ability to stand, walk and sit six to eight hours each, could perform simple, repetitive tasks and could maintain attention, concentration, persistence and pace.  This individual also could relate to and interact with others, could adapt to usual changes in the work setting and could adhere to safety rules.  The VE testified that this individual could not perform Plaintiff's past relevant work, but could perform other jobs in the national economy, such as hand packer, equipment cleaner, and production assembler.  AR 715-16.

For the next hypothetical, the ALJ asked the VE to assume an individual with the same vocational parameters and a combination of severe impairments.  This individual retained the ability to stand two hours, sit two hours, walk approximately 20 minutes total and lift and carry 10 pounds.  This individual also would need to lie down two to three hours per day during workday, would have difficulty concentrating on any single task more than 15 to 20 minutes at a time and could not perform sustained gripping and grasping bilaterally more than 15 to 20 minutes.  This individual also would have difficulty relating to and interacting with others and would have difficulty adjusting to usual changes in work settings.  The VE testified that such an individual could not perform Plaintiff's past work or any other jobs in the national economy.  AR 716-17.

For the third hypothetical, Plaintiff's counsel asked the VE to assume a person with a poor ability to understand, remember and carry out a variety of technical and/or complex job instructions and a poor ability to maintain concentration and attention for at least two hours.  The VE testified that this person could not perform Plaintiff's past relevant work.  If this person could not maintain attention and concentration for two hours at a time, there were no other jobs this person could perform.  AR 717.  If this person had deficiencies of concentration, persistence or pace that resulted in a failure to complete tasks in a timely manner, this person could not do Plaintiff's past work and would not keep a job.  If this person had a poor ability to withstand the stress and pressures of an eight-hour day, there would be no work.  AR 718.

Medical Record

1.      Physical Impairments

Between April 2003 and February 2005, Plaintiff regularly complained to Dr. Henry Ho Kang of cervical and lumbar pain.  Among other medications, she was prescribed Naprosyn, Tylenol and Klonopin.  AR 198-214, 216-25, 275-90, 583-92.   Between August 2004 and February 2006, Plaintiff also received treatment from Dr. H. William Hawkins for low back pain, arthritis, COPD and asthma.  Among other medications, she was prescribed Vicodin and Soma.  AR 301-07, 312-21, 327-28, 330, 333-37.

On June 22, 2004, Dr. Jagdev Singh summarized Plaintiff's treatment for her hoarse voice.

Plaintiff had a benign condition called amyloidosis and was a chronic smoker.  She required multiple biopsies of her larynx over the years.  Plaintiff claimed that she could not work as a waitress because she was unable to raise her voice over the background noise to communicate with customers.  Dr. Singh last saw Plaintiff in November 2003.  At that time, he diagnosed her with chronic hoarseness secondary to benign amyloidosis in the laryngeal vocal cords.  There were no other positive findings from an "ENT point of view."  AR 245-46.

On August 5, 2004, Dr. Tahir Hassan completed a consultative internal medicine evaluation.  On physical examination, Plaintiff's spine range of motion was within normal limits.  She had "mild crepts" in both knee joints.  Dr. Hassan diagnosed back pain/knee pain secondary to possible degenerative joint disease.  She also had controlled hypertension and stable asthma, along with migraine headaches, depression/anxiety and vocal cord paralysis with hoarseness.  Dr. Hassan opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, and could stand and walk with normal breaks for less than 6 hours in an 8-hour workday.  She had no limitations for pushing and pulling in her extremities.  She had postural limitations for climbing, balancing, stooping, kneeling, crouching and crawling due to back and knee pain.  She had some limitations for communication over the phone due to hoarseness.  She had environmental limitations of fumes, dust and gasses due to asthma.  She had no manipulative or visual limitations.  AR 247-49.

Dr. Hassan also completed a Medical Source - Vendor Questions form.  He opined that Plaintiff experienced exertional dyspnea after ½ block.  AR 250.

Chest x-rays completed on December 25, 2004, and on September 25, 2005, showed no evidence of acute disease.  AR 323, 308.

Plaintiff saw Dr. Singh on September 21, 2005.  On examination, Plaintiff's left vocal cord was slightly hypertrophic, but the remainder of the examination was normal.  AR 296.

X-rays of Plaintiff's right elbow dated May 31, 2006, were negative.  AR 600.

A lumbar spine x-ray completed on July 13, 2006, showed a questionable hairline fracture in the para interarticularis of L5 on the right side.  There were no changes of arthritis.  AR 427.

From September 2006 through August 2008, Plaintiff periodically received treatment from

7

1    Dr. Kang for cervical and lumbar back pain and shoulder.  AR 568-82, 638-43.

2          In August 2008, Plaintiff's low back syndrome was fairly controlled with medications.

3    However, she was to have an x-ray of her lumbar spine because of pain.  AR 629.

4                      2.        Mental Impairments

5          On August 2, 2002, Joe Torres, LCSW, assessed Plaintiff at Kings View Counseling Center.

6    Plaintiff complained of insomnia, mood swings, a depressed mood, fatigue and hearing voices.  On

7    mental status exam, Plaintiff's affect was appropriate, but her mood was depressive and her memory

8    and insight were impaired.  She had psychomotor retardation.  Mr. Torres diagnosed depressive

9    disorder NOS, alcohol dependence in full remission and rule out bipolar disorder.  He also indicated

10   that Plaintiff was socially isolated and worked part time.  She was referred for a medical evaluation,

11   but did not want psychotherapy.  AR 459-61.

12         In September 2002, Plaintiff reported auditory hallucinations to Dr. Jocelyn Aquino, a

13   psychiatrist at Kings View Counseling Centers.  Plaintiff identified voices telling her self-

14   deprecatory remarks.  She also reported racing thoughts.  However, she continued her schooling

15   despite the symptoms.  AR 456.

16         On October 17, 2002, Dr. Shireen R. Damania completed a consultative psychiatric

17   evaluation.  On mental status examination, Plaintiff's mood was depressed and her affect was

18   appropriate.  There was no evidence of hallucinations, delusions or a thought disorder.  Dr. Damania

19   diagnosed Plaintiff with depressive disorder not otherwise specified and assigned her a Global

20   Assessment of Functioning ("GAF") of 55.  Dr. Damania noted no difficulties in memory,

21   concentration, persistence or pace, but Plaintiff appeared clinically depressed.  She was able to

22   understand, carry out, and remember simple as well as one- and two-step job instructions.  She was

23   able to respond appropriately to coworkers, supervisors and the public, but would have difficulty

24   responding appropriately to usual work situations and dealing with changes in a routine work setting

25   because of subjective allegations of fatigue and her clinical depression.  AR 462-65.

26         In February 2003, Plaintiff reported to Dr. Herbert A. Cruz, a psychiatrist at Kings View

27   Counseling Centers, that this was the best she had felt in years.  Dr. Cruz indicated that Plaintiff had

28                                          8

1  been tolerating her Abilify well and they would continue to pursue the lowest optimal dosing,

2  especially since it had been of "such great benefit."  AR 242.

3          On May 5, 2003, Dr. Cruz noted that Plaintiff ran out of medications for three weeks and

4  began to re-experience anxiety and depression.  Dr. Cruz indicated that Plaintiff would be given

5  Klonopin for one week, while her Abilify "kicks in."  AR 241.

6          On July 7, 2003, Dr. Cruz discussed termination and transfer of care.  Plaintiff appeared to be

7  stable except for difficulty sleeping.  Dr. Cruz prescribed Ambien.  AR 240.

8          On August 4, 2003, Dr. Orlando T. Collado, a psychiatrist at Madera County Behavioral

9  Health Services, opined that Plaintiff was compliant with her medication and her progress was

10  stable.  AR 239.

11          On October 16, 2003, Plaintiff was admitted to Community Behavioral Health Center on a

12  5150 hold.  She was making statements that she was depressed and could take pills in an overdose

13  and suicide attempt.  A mental status examination on admission showed a depressed mood,

14  dysphoric affect, and suicidal ideation.  During her hospital stay, Abilify and Lexapro were started.

15  She had a short hospital stay with "notable quick improvements."  AR 153.  On October 19, 2003,

16  Plaintiff requested discharge.  Her 5150 was expiring.  She denied dysphoria or any self harm

17  ideation.  Her final diagnosis was bipolar disorder, depressed, with a GAF of 45.  She was to

18  continue Lexapro and Abilify.  AR 152, 154.

19          On October 21, 2003, Plaintiff reported to Dr. Collado that she had been released from the

20  hospital.  She was non-compliant with her medication and her mood was anxious.  She was to

21  continue Abilify and increase Klonopin.  AR 237-38.

22          On November 24, 2003, Plaintiff told Dr. Collado that she was feeling more depressed with

23  no motivation.  On mental status exam, her affect was blunted, her mood was depressed and her

24  behavior was hostile.  AR 235.

25          On December 29, 2003, Dr. Collado noted that Plaintiff was anxious with a blunted affect

26  and reports of depression.  Her progress was unchanged.  AR 233.

27          On February 23, 2004, Dr. Collado reported that Plaintiff continued to do well with her

28                                                      9

1    medications.  AR 231.

2         On March 20, 2004, Dr. Ekram Michiel conducted a consultative psychiatric evaluation.

3    Plaintiff complained of anxiety attacks, depression, suicidal thoughts, inability to sleep and anger.

4    She could take care of her personal hygiene and household chores.  On mental status examination,

5    her mood was depressed and her affect was slightly restless.  Her thought process was goal-directed

6    and her thought content was not delusional.  Dr. Michiel diagnosed Plaintiff with an anxiety

7    disorder, NOS, and assigned her a GAF of 60-65.  He opined that Plaintiff could maintain attention

8    and concentration and carry out one or two step simple job instructions.  She also was able to relate

9    and interact with co-workers, supervisors and the general public.  She was unable to carry out an

10   extensive variety of technical and/or complex instructions.  AR 178-80.

11        On April 21, 2004, Dr. Middleton, a state agency consultant, completed a Psychiatric Review

12   Technique form.  Dr. Middleton diagnosed Plaintiff as bipolar, with anxiety not otherwise specified

13   and post traumatic stress disorder.  She had mild to moderate restriction of activities of daily living,

14   mild to moderate difficulties in maintaining social functioning and mild to moderate difficulties in

15   maintaining concentration, persistence or pace.  AR 251-64.

16        Dr. Middleton also completed a Mental Residual Functional Capacity Assessment form.  Dr.

17   Middleton opined that Plaintiff had moderate limitations in the ability to understand and remember

18   detailed instructions and in the ability to carry out detailed instructions.  She had no other significant

19   limitations.  AR 268-69.

20        On April 27, 2004, Plaintiff showed good response to her current medications, but reported

21   occasional episodes of anxiety and depression.  AR 229-30.

22        On June 22, 2004, Dr. Collado noted "marked improvement" in Plaintiff's progress.  She was

23   to continue Klonopin, Abilify, and Zoloft, along with Restoril for insomnia.  AR 227.  In August

24   2004, Dr. Collado again noted "marked improvement."  AR 351.

25        On September 2, 2004, Dr. Collado opined that Plaintiff was not mentally and/or physically

26   fit for gainful employments as a result of her bipolar disorder and PTSD.  Dr. Collado believed this

27   inability would continue for 6 months to 1 year.  Plaintiff had a depressive syndrome characterized

28                                                   10

by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, psychomotor agitation or retardation and thoughts of suicide.  She also had a manic syndrome characterized by hyperactivity, easy distractability and hallucinations, delusions or paranoid thinking.  Plaintiff also had a bipolar syndrome with a history of episodic periods of both manic and depressive syndromes, along with mood swings.  Dr. Collado opined that Plaintiff had slight restriction of her activities of daily living and slight difficulties in maintaining social functioning.  She often had deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner.  She had episodes of deterioration or decompensation once or twice.  Dr. Collado further opined that Plaintiff had a poor ability to understand, remember and carry out an extensive variety of technical and/or complex job instructions, a poor ability to maintain concentration and attention for at least two hour increments due to hallucinations and a poor ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity.  Dr. Collado indicated that Plaintiff had an onset date of August 2, 2002.  AR 291-95.

In October 2004, Dr. Collado indicated that Plaintiff showed marked improvement.  She was to continue her medications.  AR 349.  On December 7, 2004, Plaintiff reported that things were going well and her mood was stable.  AR 347.  In February and April 2005, Plaintiff's progress remained stable.  AR 345-46.  On June 13, 2005, Plaintiff reported that her medications were working fine and her mood was stable.  AR 344.

On October 6, 2005, Plaintiff again reported doing fine and her medications working fine.  Her progress was stable.  AR 341.  Dr. Collado also noted that Plaintiff was stable as of December 2, 2005.  AR 342.

On March 2, 2006, Dr. Collado described Plaintiff's progress as worse.  She had a manic episode the prior month and Restoril was not helping her sleep.  Dr. Collado increased Plaintiff's Klonopin and changed her insomnia medication to Halcion.  AR 339.

In April 2006, Plaintiff indicated that her medications were working and her mood was more stable.  She admitted to occasional anxiety.  On mental status exam, her mood was normal and her affect appropriate.  Her thought process was intact and she had no hallucinations or delusions.  AR

11

1    455.

2           In July 2006, Plaintiff reported that her medications were working and her mood was fairly

3    stable.  She had no hallucinations or delusions.  AR 453.

4           On November 27, 2006, Dr. Collado indicated that Plaintiff was stable.  Her affect was

5    appropriate and her mood was normal.  She had no hallucinations or delusions.  AR 449.

6           In January 2007, Plaintiff reported that her medications continued to help.  Although she

7    claimed mood swings, they did not cause her problems.  Dr. Collado described her condition as

8    stable.  AR 447.

9           On March 21, 2007, Plaintiff reported that her medications were working fine and her mood

10   was stable.  She had no complaints of side effects.  AR 445.

11          In May 2007, Plaintiff told Dr. Collado that she had been walking and hoping to lose weight.

12   She was sleeping and her mood was stable.  Dr. Collado described her progress as stable.  AR 443.

13   Plaintiff's progress continued to be stable in July, September and November 2007.  AR 437, 439,

14   441.

15          On January 4, 2008, Plaintiff told Dr. Collado that she had heard voices three weeks prior,

16   but they went away.  Dr. Collado described her progress as "stable."  AR 435.

17          On February 12, 2008, Plaintiff reported to Dr. Collado that she had been without medication

18   for a week and was beginning to be irritable and angry.  Her progress as "worse" and she was to start

19   back on her medications, including Abilify, Wellbutrin, Xanax and Restoril.  AR 433.

20          On March 13, 2008, Plaintiff appeared anxious and reported again hearing voices.  Dr.

21   Collado noted minimal improvement in Plaintiff's progress.  AR 636.

22          On the same date, Dr. Collado completed a Psychiatric Review Technique form.  He stated

23   that Plaintiff had hallucinations, a depressive syndrome and a manic syndrome.  He opined that she

24   had mild functional limitations with one or two repeated episodes of decompensation.  AR 593-97.

25   He further opined that Plaintiff had a fair ability to relate and interact with supervisors and co-

26   workers, a fair ability to understand, remember and carry out an extensive variety of technical and/or

27   complex job instructions, a good ability to understand, remember and carry out simple one-or-two-

28
                                                    12

step job instructions, a fair ability to deal with the public, and a fair ability to maintain concentration and attention for at least two hour increments.  However, she had a poor ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity.  Dr. Collado commented that Plaintiff's response to treatment was good, but she had occasional episodes of hallucinations and agitation when under stress.  AR 598.

In May 2008, Plaintiff reported that her medications were working and she was not having mood swings.  Dr. Collado noted "marked improvement."  AR 634.

In July 2008, Plaintiff reported that she was less anxious, was feeling good and was not worried.  Dr. Collado again noted "marked improvement" in Plaintiff's progress.  AR 632.

ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2003, and had not engaged in substantial gainful activity since October 20, 2003.  The ALJ further found that Plaintiff had bipolar disorder, a severe mental impairment.  Despite this impairment, Plaintiff retained the residual functional capacity ("RFC") to perform work without exertional limitations. She could lift up to 100 pounds occasionally, 50 pounds frequently, could sit, stand or walk for 6 hours in an 8-hour day.  She also had the mental capacity to understand, remember, and carry out simple routine tasks, to maintain attention, concentration, persistence, or pace, to relate to and interact with others, to adapt to the usual changes in work settings and to adhere to safety rules. With this RFC, the ALJ concluded that Plaintiff could not perform any past relevant work, but she could perform other jobs in the national economy.  AR 32-38.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might

1   accept as adequate to support a conclusion." _Richardson_, 402 U.S. at 401.  The record as a whole

2   must be considered, weighing both the evidence that supports and the evidence that detracts from the

3   Commissioner's conclusion.  _Jones v. Heckler_, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

4   evidence and making findings, the Commissioner must apply the proper legal standards.  _E.g.,_

5   _Burkhart v. Bowen_, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the

6   Commissioner's determination that the claimant is not disabled if the Commissioner applied the

7   proper legal standards, and if the Commissioner's findings are supported by substantial evidence.

8   _See_ _Sanchez v. Sec'y of Health and Human Serv._, 812 F.2d 509, 510 (9th Cir. 1987).

9                                              **REVIEW**

10          In order to qualify for benefits, a claimant must establish that she is unable to engage in

11  substantial gainful activity due to a medically determinable physical or mental impairment which has

12  lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §

13  1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such

14  severity that she is not only unable to do her previous work, but cannot, considering her age,

15  education, and work experience, engage in any other kind of substantial gainful work which exists in

16  the national economy.  _Quang Van Han v. Bowen_, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden

17  is on the claimant to establish disability.  _Terry v. Sullivan_, 903 F.2d 1273, 1275 (9th Cir. 1990).

18          In an effort to achieve uniformity of decisions, the Commissioner has promulgated

19  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R.

20  §§ 404.1520(a)-(g); 416.920(a)-(g).  Applying the process in this case, the ALJ found that Plaintiff:

21  (1) had not engaged in substantial gainful activity since October 23, 2003; (2) has an impairment or a

22  combination of impairments that is considered "severe" (bipolar disorder) based on the requirements

23  in the Regulations (20 C.F.R. §§ 404.1520(c); 416.920(c); (3) does not have an impairment or

24  combination of impairments which meets or equals one of the impairments set forth in Appendix 1,

25  Subpart P, Regulations No. 4; (4) cannot perform her past relevant work; but (5) can perform other

26  jobs in the national economy.  AR 32-39.

27          Here, Plaintiff contends that the ALJ erred by: (1) rejecting the opinion of her treating

28                                                 14

1  psychiatrist, Dr. Collado; (2) rejecting the opinion of the consultative examiner, Dr. Hassan; and (3)

2  discounting her credibility.

3                                    **DISCUSSION**

4  A.      Treating Physician Opinion - Mental Impairment

5          Plaintiff first argues that the ALJ failed to provide specific and legitimate reasons for

6  rejecting the opinion of her treating psychiatrist, Dr. Collado.

7          Treating physicians are owed considerable deference.  *Edlund v. Massanari,* 253 F.3d 1152,

8  1157 (9th Cir.2001).  However, their opinions can "be rejected for specific and legitimate reasons

9  that are supported by substantial evidence in the record."  *Id.* (internal quotation marks omitted).  The

10 "reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the

11 adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.*

12 (internal quotation marks omitted).  "The ALJ is responsible for determining credibility, resolving

13 conflicts in medical testimony, and resolving ambiguities."  *Id.* at 1156.

14         Here, the ALJ gave limited weight to Dr. Collado's statement in August 2004 that Plaintiff

15 would have difficulty maintaining attention and concentration for 2-hour increments or withstanding

16 work stress because the statement was unsupported by his treatment records.  AR 36.  Plaintiff

17 contends that this reason is not specific or legitimate primarily because of Dr. Collado's treatment

18 relationship with her.  However, a lack of supporting clinical findings is a valid reason for rejecting a

19 treating physician's opinion.  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989); s*ee also*

20 *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly

21 discounted or assigned minimal weight to treating physician opinions that were unsupported by

22 objective evidence and that lacked substantive medical findings); *Holohan v. Massanari,* 246 F.3d

23 1195, 1202 n. 2 (9th Cir. 2001) (stating that a physician's opinion may be "entitled to little if any

24 weight" where the physician "presents no support for her or his opinion").  In discounting the

25 statement, the ALJ explained that Dr. Collado based his 2004 opinion on Plaintiff's history of

26 hallucinations, but contemporaneous treatment records showed that Plaintiff was doing fine and was

27 stable on medications.  AR 231, 227, 344-47, 349, 351.  The ALJ further noted that with one

28                                          15

1   exception in 2008, Plaintiff's treatment records did not show that she had auditory hallucinations.[2]

2   AR 36.  Plaintiff does not cite any contradictory evidence.  Indeed, Plaintiff admits that Dr. Collado

3   "successfully treated" her "most extreme" mental impairments and symptoms.  Opening Brief, pp. 9-

4   10.

5       Plaintiff attempts to argue that Dr. Collado's successful treatment was not inconsistent with a

6   caution that Plaintiff could not withstand the stresses and pressure of an 8-hour workday because of

7   her bipolar disorder.  Plaintiff provides no support for this argument.  According to the record, Dr.

8   Collado opined in 2008 that Plaintiff had a poor ability to withstand the stress and pressures

9   associated with an eight-hour work day and day-to-day work activity because of occasional episodes

10  of hallucinations and agitation when under stress.  AR 598.  As discussed above, however, Dr.

11  Collado's treatment records did not identify repeated episodes of hallucinations.  Dr. Collado also

12  opined that Plaintiff only had mild functional limitations with one or two repeated episodes of

13  decompensation.  She also had a fair ability to relate and interact with supervisors and co-workers, a

14  fair ability to understand, remember and carry out an extensive variety of technical and/or complex

15  job instructions, a good ability to understand, remember and carry out simple one-or-two-step job

16  instructions, a fair ability to deal with the public, and a fair ability to maintain concentration and

17  attention for at least two hour increments.    AR 593-97.

18      The ALJ did not reject Dr. Collado's opinion in its entirety.  Rather, the ALJ assigned greater

19  weight to Dr. Collado's 2008 assessment that Plaintiff had a good capacity to carry out simple tasks

20  and a fair capacity to interact with others.  AR 36.  Plaintiff fails to acknowledge the ALJ's

21  determination that Dr. Collado's assessment was consistent with the consultative examiner, Dr.

22  Michiel, and the state agency medical consultants.  AR 36, 178-80, 268-69.  The ALJ gave

23  substantial weight to Dr. Michiel's opinion that Plaintiff could perform one or two step simple job

24  instructions and relate to and interact with coworkers, supervisors, and the general public.  AR 36.

25  An examining physician's opinion constitutes substantial evidence.  *Tonapetyan v. Halter*, 242 F.3d

26

27      [2]The record contains two reports of auditory hallucinations in 2008.  AR 434-35, 636.  This additional episode does not substantially alter the ALJ's determination.

28                                          16

1    1144, 1149 (9th Cir. 2001) (consultive examiner's opinion is substantial evidence).

2         The ALJ also assigned substantial weight to the opinions of the state agency medical

3    consultants.  AR 36.  The reports of non-examining advisors "need not be discounted and may serve

4    as substantial evidence when they are supported by other evidence in the record and are consistent

5    with it."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The state agency consultants

6    found that Plaintiff could perform simple repetitive tasks, which was consistent with the conclusions

7    of Plaintiff's treating physician and the consultative examiner.

8         Based on the above, the ALJ's analysis of the medical opinions regarding Plaintiff's mental

9    impairment is supported by substantial evidence and free of legal error.

10   B.   Opinion of Consultative Examiner - Physical Impairments

11        Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting Dr.

12   Hassan's limitations on lifting, sitting, standing and walking.  Contrary to Plaintiff's assertion, an

13   ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the

14   physician's opinions.  *See Magallanes*, 881 F.2d at 753-754.  Here, the ALJ gave weight to Dr.

15   Hassan's findings that Plaintiff had normal range of movement in her neck, back and the joints of her

16   extremities, and only slight crepitus in her knees during range of movement testing.  AR 356.

17   However, the ALJ assigned little weight to Dr. Hassan's opinion that Plaintiff could stand or walk

18   less than 2 hours, sit less than 6 hours and walk less than one block without knee pain and shortness

19   of breath.  The ALJ first explained that these limitations were based on Plaintiff's self-reported

20   symptoms.  An ALJ may properly disregard a physician's opinion that is premised on a claimant's

21   properly discounted subjective complaints.  *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).  As

22   discussed more fully below, the ALJ properly discounted Plaintiff's subjective complaints.

23        The ALJ also discounted the standing, walking and sitting limitations because they were

24   contradicted by Dr. Hassan's own examination findings.  AR 35.  As stated above, the lack of

25   supporting clinical findings is a valid reason for rejecting a physician's opinion.  *See Magallanes*,

26   881 F.2d at 751; *see also Batson*, 359 F.3d at 1195 (affirming ALJ's rejection of physician opinion

27   that was unsupported by substantive medical findings).  In particular, the ALJ cited Dr. Hassan's

28                                                      17

1   contradictory findings that Plaintiff had normal range of movement in her neck, back and joints of

2   her extremities and only slight crepitus in her knees during range of movement testing.  AR 35, 247-

3   49.  Plaintiff counters that Dr. Hassan's opinion was not based solely on clinical observations, but

4   also on a review of records from her treating physicians demonstrating back and knee pain.  Opening

5   Brief, p. 10.  Plaintiff's argument is based on supposition and is not supported by the administrative

6   record.  Although Dr. Hassan stated that he reviewed Plaintiff's records, there is no identification of

7   those records.  Moreover, Dr. Hassan clearly stated that Plaintiff's "assessment [was] based on the

8   physical exam" he performed.  AR 249.

9           Accordingly, the ALJ provided specific, legitimate reasons supported by substantial evidence

10  for discounting Dr. Hassan's standing, walking and sitting limitations.

11  C.      Credibility Determination

12          Plaintiff argues that the ALJ failed to provide good reasons to discount her credibility.  The

13  Commissioner counters that the ALJ properly considered Plaintiff's subjective complaints.  The

14  Court agrees.

15          In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

16  pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

17  subjective complaints:

18                  An ALJ is not "required to believe every allegation of disabling pain" or other
            non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).
19          However, to discredit a claimant's testimony when a medical impairment has been
            established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"
20          *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834).  The ALJ must "cit[e] the
            reasons why the [claimant's] testimony is unpersuasive." *Id.*  Where, as here, the ALJ
21          did not find "affirmative evidence" that the claimant was a malingerer, those "reasons
            for rejecting the claimant's testimony must be clear and convincing." *Id.*

22

23                  Social Security Administration rulings specify the proper bases for rejection of
            a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot
24          be supported by reasons that do not comport with the agency's rules.  *See* 67 Fed.Reg.
            at 57860 ("Although Social Security Rulings do not have the same force and effect as
25          the statute or regulations, they are binding on all components of the Social Security
            Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see*
26          *Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's
            decision at step three of the disability determination was contrary to agency
27          regulations and rulings and therefore warranted remand).  Factors that an ALJ may

28                                                    18

1   consider in weighing a claimant's credibility include reputation for truthfulness,
    inconsistencies in testimony or between testimony and conduct, daily activities, and
2   "unexplained, or inadequately explained, failure to seek treatment or follow a
    prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at
3   958-59.

4          Here, the ALJ questioned Plaintiff's credibility for several reasons.  First, the ALJ cited

5   evidence that Plaintiff had exaggerated symptoms and limitations.  For example, the ALJ noted

6   medical evidence showing chronic hoarseness, but no opinion from her throat specialist or treating

7   physicians supporting Plaintiff's claimed whispering limitation.  AR 37, 697-98, 707.  The ALJ also

8   noted that Plaintiff testified to "very restrictive physical limitations on sitting, standing, and

9   walking," but the medical records did not establish any impairment that would cause these

10  restrictions.  AR 37.  An ALJ may properly consider exaggerated complaints in discounting a

11  claimant's credibility.  *Tonapeytan*, 242 F.3d at 1148 (ALJ may use "ordinary techniques of

12  credibility evaluation," including consideration of inconsistent statements). *Smolen v. Chater*, 80

13  F.3d 1273, 1284 (9th Cir. 1996) (ALJ may consider ordinary techniques of credibility evaluation,

14  such as prior inconsistent statements and other testimony that appears less than candid).

15         Second, the ALJ found Plaintiff less than credible because she made inconsistent statements

16  and engaged in inconsistent activities.  Despite her alleged physical impairments, Plaintiff was

17  walking, jogging and bike-riding eight months before the September 2008 hearing.  Plaintiff also

18  told Dr. Collado in May 2008 that she was walking every day although she testified that she had

19  stopped exercising eight months prior to the September 2008 hearing.  AR 37, 634, 703.

20  Additionally, Plaintiff testified to side effects from her medication, including sleepiness and

21  difficulty concentrating, but according to treatment notes she only complained of weight gain and

22  repeatedly denied any side effects.  AR 37, 339-52, 433-55, 593-98, 632-37.  The ALJ properly

23  determined that these inconsistencies diminished Plaintiff's credibility.  *See Thomas v. Barnhart*,

24  278 F.3d 947, 958-59 (9th Cir.2002); *Morgan v. Comm'r,* 169 F.3d 595, 600 (9th Cir.1999)

25  (claimant whose testimony was contradicted by medical records and admitted daily activities

26  properly found not credible); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir.

27  2009) (an ALJ may weigh inconsistencies between a claimant's testimony and his or her conduct and

28

1    daily activities).

2         Third, the ALJ discounted Plaintiff's allegations based on a lack of objective medical

3    evidence. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully

4    corroborated by objective medical evidence, the medical evidence is still a relevant factor in

5    determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261

6    F.3d 853, 857 (9th Cir.2001). In addition to the examples above, the ALJ rejected Plaintiff's

7    testimony regarding continued auditory hallucinations, because her mental health records showed

8    that she had been free of hallucinations except for an episode in January 2008 and an episode in

9    March 2008. AR 37, 434-35, 636. Plaintiff also testified to self-isolation and agoraphobia, but these

10   conditions were not identified in her mental health records. AR 37.

11        Fourth, the ALJ considered records from Drs. Kang and Hawkins after May 2004, which

12   demonstrated that Plaintiff obtained prescriptions for narcotic medications from both physicians at

13   the same time and for the same complaints. AR 37. Plaintiff claims that the ALJ's determination is

14   "an unsupported imputation of bad character" and, even if true, would not diminish the physicians'

15   opinions that she could not sustain day-to-day-work. Opening Brief, p. 13. However, an ALJ may

16   properly consider drug-seeking behavior in assessing credibility. *See Edlund*, 253 F.3d at 1157. The

17   ALJ explained that Plaintiff's course of action suggested a purposeful exaggeration of her pain

18   symptoms, which undermined her testimony about limitations secondary to pain. AR 37.

19        Fifth, the ALJ considered Plaintiff's testimony that she could not maintain attention for more

20   than 15-20 minutes, but observed that she had no difficulty maintaining attention during her 50-

21   minute hearing. AR 37. An ALJ's observations of a claimant's functioning at the hearing are

22   permissible as part of the overall credibility assessment. *See Orn*, 495 F.3d at 639.

23        As a final matter, the ALJ noted that Plaintiff had "a poor work history," which lessened her

24   credibility. AR 37. A poor work history is a relevant factor in a credibility determination. See

25   *Thomas*, 278 F.3d at 959 (finding a claimant's "extremely poor work history" negatively affected her

26   credibility regarding her inability to work).

27        Based on the above, the ALJ has provided specific, cogent reasons for discounting Plaintiff's

28                                                    20

1    credibility.

2                              **RECOMMENDATION**

3            The Court finds that the ALJ's decision is supported by substantial evidence and is based on

4    proper legal standards.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the

5    administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT

6    be entered for Defendant Michael J. Astrue and against Plaintiff Betty Louise Gillespie.

7            These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill

8    pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served

9    with these findings and recommendations, the parties may file written objections with the court.  The

10   document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

11   The parties are advised that failure to file objections within the specified time may waive the right to

12   appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

13

14           IT IS SO ORDERED.

15        **Dated:**    **October 7, 2011**              _____ **/s/ Dennis L. Beck**_____
                                                         UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28                                              21